Mohr & Mohr Distilling Company *v.* Ohio Insurance Company, of Dayton, Ohio.*

(*Circuit Court, S. D. Ohio, W. D.* June, 1882.)

1. INSURANCE BROKER—AGENT FOR INSURED OR INSURERS?—TEST.

If plaintiffs (the insured) employed an insurance broker to place insurance for them, he was *their* agent, and not that of the insurance company. But if, acting on behalf of an agent of the company, the broker solicited insurance from the plaintiffs, he was the agent of the insurance company, and it is legally chargeable with his knowledge.

2. INSURANCE—WHAT MAKES A GENERAL AGENT IN EFFECTING INSURANCE.

When an insurance agent who is assigned by his commission to a certain territory, has placed in his hands the blank policies of the company, signed by the president and secretary, and is on the face of such policies authorized to make contracts of insurance by countersigning the same, he is a general agent to the extent of everything relating to the effecting of insurance within the territorial limits to which he has been assigned; and one seeking insurance is not bound to inquire as to the precise instructions he has received from his company.

3. UNAUTHORIZED ISSUE OF POLICY—DISAVOWAL BY COMPANY.

Where such an agent, in violation of private instructions given to him, issues a policy covering property in territory outside of his district, the company may

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

either ratify or disavow such a policy; but the disavowal must be prompt, and notice thereof must be brought home to the insured, otherwise the company will be deemed in law to have ratified the policy.

4. CANCELLATION OF INSURANCE POLICY — ONUS PROBANDI — SUFFICIENT EVIDENCE.

The burden of proving a cancellation of a policy of insurance is upon the party claiming that the contract has been terminated. Where a policy provided that the company might terminate the insurance " by giving notice to the assured and refunding a ratable proportion of the premiums for the unexpired term of the policy," *held*, that the company must show that it had given the assured notice that the policy was canceled, and that it had paid, or tendered him, such portion of the premium; and notice that the policy would be canceled, or a promise to pay, or a request to call for the premium, is insufficient.

*Runkle* v. *Citizens' Ins. Co.* 6 FED. REP. 143, followed.

*Moulton, Johnson & Levy* and *W. H. Jones*, for plaintiff.

*Follett, Hyman & Dawson* and *Judge Haynes*, for defendant.

SWING D. J., (*charging jury.*) This action is brought by the plaintiff to recover of the defendant on two policies of insurance which it is claimed by the plaintiff were issued by the defendant. The first policy is dated June 14, 1881, for $1,000; the second, September 16, 1881, for $1,500. The petition alleges the payment of the premium; alleges the loss; alleges the notice to the company of the loss; and claims that they, in all respects, complied with the requirements of their contract, and therefore that the defendant is liable to them in the sum of $1,000 and $1,500, or at least the proportion that these sums must bear to the entire loss, taking the other insurance into consideration. That is the claim of the plaintiff by the petition in the case.

To this claim of the plaintiff the defendant interposes but two defenses, substantially. There were three, one of which I shall allude to now—that they had not complied with the laws of Indiana, and therefore had no power to enter into any contract for the insurance of property in Indiana. That has been abandoned by counsel before the jury, so that the only two defenses that remain in the case are—*First*, that the agent who took this risk exceeded his authority in this, that he was appointed as an agent of this company, for the city of Norwalk and vicinity, and this property being in the state of Indiana, he has no power to enter into any contract for the insurance of property in the state of Indiana; in other words, he had no power to enter into a contract for the insurance of property outside of the city of Norwalk and its vicinity. The *second* defense is that the policy contains a clause that if there shall be any misrepresentation in regard to the title, etc., (enumerating a number of things,) the policy

shall be void, and that there was a misrepresentation by the plaintiff in this, to-wit: *First*, that it was represented that the property was owned by a company residing in Cincinnati; and, *second*, it was represented that other insurance companies were taking risks upon this property at 4 per cent. That is another defense in the case. Whatever may have been said outside of the pleadings, that is the defense as made in the case.

Upon the presentation of the contract and the proof of loss, and the compliance upon the part of the plaintiff with the requirements of the policy, the plaintiff is entitled to a verdict at your hands. If that verdict is defeated, it must be by the defendant establishing one or both of the defenses which are set up—*First*, that the agent had no power to issue this policy outside of the territorial limits of the city of Norwalk and its vicinity; and, *second*, that it was misrepresented to them as to the title of the property, and to the extent other insurance companies were placing insurance upon it.

The defendant has introduced testimony in the case upon these points, and the plaintiff has introduced its testimony upon the several points, and it is now wholly with the jury to determine what the testimony has established in the case.

I am asked by the defendant to give you certain instructions in the case. It is claimed by the parties that this insurance was obtained by a brother of the agent of the company. It is claimed by the plaintiff in the case that he was acting on behalf of the agent, and therefore on behalf of the company; that that was the position which he occupied. On the other hand, it is claimed by the defendant that he was employed by the plaintiff in the case to place this insurance. It is said by the counsel for the plaintiff that the law of the state of Ohio makes the person soliciting insurance the agent of the insurance company. That, as a general proposition, is true; but a broker may be the agent of one party, or he may be the agent of both parties, and in a certain sense he is the agent of both parties in many transactions mercantile, as many of you know. The first charge I am asked to give you by the defendant is this:

*First.* That William R. Johnson, employed by the plaintiffs to place this insurance, was the agent of the plaintiffs in making application for the insurance, and that any knowledge he had, or that was communicated to him, in relation to the authority of the agent at Norwalk to issue the policies of insurance sued on in this case, is the knowledge of the plaintiffs.

That assumes a fact, to-wit, that he was the agent of the plaintiff. It must be left to the jury under the instruction. If the plain-

tiff went and employed William R. Johnson, the broker, to go and place this insurance for them, paid him for it, settled with him for it, then he was the agent of the plaintiff, and his knowledge was the knowledge of the plaintiff, because the principal is always chargeable with the knowledge of the agent which is acquired in and about the business he is employed to transact. If, on the other hand, Frank R. Johnson, the defendant's regular agent at Norwalk, had been for several years in the insurance business, and his brother, William R. Johnson, had been in the brokerage insurance business, acting for and on behalf of the agent at Norwalk, as well as other agents, and he called upon Mohr & Mohr, representing his brother, and solicited for his brother this insurance to be placed in this company, then he was not the agent of Mohr & Mohr, but of the insurance company; so that if you find that he was the agent of Mohr & Mohr, then this first instruction will be given. If, on the other hand, he was the agent of the insurance company, this knowledge was the knowledge of the insurance company, and not that of the plaintiff.

*Second.* The knowledge of the agent is the knowledge of the principal when such agent is acting within the scope of his authority; and if you find that William R. Johnson was employed by the plaintiffs to place insurance, he was the agent of the plaintiffs in applying for said insurance

That I give you.

*Third.* If you find that Frank F. Johnson was a local agent only of the defendant, and that the territory within which he was authorized to represent the defendant as such agent was limited to Huron county and its vicinity, such authority to represent the company did not vest him with the powers of a general agent outside of such territorial limits.

That I give you in a modified form. If his agency was confined to Huron county and its vicinity, his general agency did not authorize him to transact business outside of that locality, as a general proposition, as I heretofore stated it. What I shall say to you hereafter in connection with this matter will be the law to govern you in the determination of this case.

If, however, the jury find that although his authority may have been limited to the county of Huron, or to the city of Norwalk and its vicinity, this did not render absolutely void all acts or contracts of his in relation to insurance outside of that territory. The company were in such a position that they could ratify the acts and adopt them as their own. It is admitted by the counsel for the defendant in the case that the company itself, at the city of Dayton, could have taken a risk upon property in the state of Indiana, and

that that would have been binding upon them, and the fact that they had not complied with the laws of Indiana in regard to the taking of insurance would have been no defense to them when an action was brought upon a policy of insurance to recover for a loss. That is admitted. If that be admitted, it must be very clear that the contract which a local agent might enter into for the insurance of property of that kind—I speak of a local agent, one who is confined territorially, but whose general powers to make contracts for insurance may be termed a general agency, to-wit, not a special agent, having power only to receive propositions for insurance and transmit them to the department at Dayton, and subject to their ratification, but one who has placed in his hands the blank contracts of the company, signed by the president and secretary, and who is authorized to make the contract for the premium, and all that he has to do is simply to countersign the instrument executed by the company and the secretary in order to make it binding—I say when such authority is placed in his hands he is a general agent to the extent of everything relating to the effecting of insurance within certain limits. Having these powers, and it being within the power of the company themselves to issue a policy covering property in the state of Indiana, they undoubtedly have the right to ratify any act of his making such a contract.

Now, it is claimed in this case that the plaintiffs knew the extent of his power, and that they were chargeable with the knowledge of the extent of his power because they did not inquire into the extent of it; not only that they knew it in fact, but that they were chargeable with the knowledge of the extent territorially of his power. That proposition is not sound to that extent. If, apparently, a man has authority to do the thing that he is doing,—general power and general authority,—to-wit, if you go to a man who is holding himself out as the agent of a company, and he has in his possession the contracts, or the blank contracts, of the company, duly signed and executed by the officers of that company as required by the charter or by-laws of the company, the man who goes there and sees the condition of things in that light is not bound to go and inquire of that agent the precise character of the instructions which he has received verbally from his company. That is a private matter between the company and its agent. But suppose it were true that he was bound to do so, and suppose it were true that Mohr & Mohr knew the extent of the agent's powers, still a contract of this character could be ratified by the company, although the agent may have exceeded the lim-

its of his power.   Now, if on the fourteenth of June this party entered into this contract with Mohr & Mohr, and reported it to his company on the twentieth of June, the law says that that company, if this agent has exceeded his power, must be prompt in disavowing it, or else the presumption of the law is that they acquiesced in it.   Now, the defendant in the case claims that, upon the receipt of that report of the twentieth of June, they promptly disavowed the act of the agent.   They notified him that he had no power to enter into it. The agent, on the other hand, swears that he never received such a letter, or any such instructions.   Whether it was received or not by the agent is a question of fact for the jury to determine.   If they did not disavow the act of the agent,—disclaim it as their act,—but permitted it to remain until after this fire in that condition, the law presumes that they assented to it, although they never said a word about it.

Again, it is for the jury to determine, if they find from the evidence of the case that the letter of the 20th was written and the letter of the 27th was written, whether either one of these letters, or both of them, was a disavowal of the authority of this agent to make this contract, or whether they did not treat it as a contract entered into properly by the agent, and required him to take the legal steps to get rid of it.   That is another question for the jury.

This contract has this provision in it : "Insurance shall also be terminated at any time by the company at its option on giving notice to the assured, and refunding a ratable proportion of the premium for the unexpired term of the policy."   That is the language of it.

The first letter written is as follows:

"June 20, 1881.

"*F. B. Johnson, Norwalk, Ohio*—DEAR SIR: Please cancel No. 31,849, the Mohr & Mohr Distilling Company, on receipt of this.   The risk is bad, out of your territory, and of a class we fight very shy of under any circumstances. I trust you will relieve us at once.

"I am very truly yours,          W. H. GILLESPIE."

The question is for you to determine whether this is a disavowal of the authority of the agent to make the contract, and whether they placed it upon that ground, or whether upon the fact that it is a kind of property that they fight very shy of, and they wanted him to cancel it.   It is a question of fact.

And so with the letter of the 27th.   They say:

"On the twentieth day of last June we ordered you to cancel our No. 31,849, and here you are this morning taking on the same risk, making it $2,500, after being instructed to keep out of Indiana, and your last July report was

only received on the 27th. What manner of doing business is this? I was informed the Mohr risk was burned. Did you take it up? How did you come to issue 34,932? Your draft came back unpaid this morning. What is the matter at Norwalk?"

It is a question of fact for the jury to determine whether or not it is a disavowal of authority to make the contract at all, or whether it is an allusion to his lack of judgment in placing risks where they ought not to be.

Now, if the jury come to the conclusion that it was not a disavowal of authority, but that it was an order to him to cancel the policy under the power which the company had under this policy to put the contract at an end whenever they saw proper on certain conditions, this court has held that they had to do certain things.

In the case of *Runkle* v. *Citizens' Ins. Co.* 6 FED. REP. 148, this language is used:

"It is claimed by the defendant that it is not liable because it had canceled the policy of insurance. The policy contains, among other provisions, the following: 'It is also a condition of this insurance that it may be terminated at any time at the request of the assured, in which case the company shall retain only the customary short rates for the time the policy has been in force. The insurance may be terminated at any time at the option of the company by giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy.' It is within the province of the parties to a contract of insurance to stipulate in the policy that the assured may at any time terminate the contract and surrender the policy, and be entitled to a ratable proportion of the unearned premiums, and that the insurer may at any time at his option terminate the contract and cancel the policy by giving notice to the assured to that effect, and paying to him a ratable portion of the premium for the unexpired term. This policy of insurance contains such a stipulation. The right, however, to terminate a contract of insurance which has been fairly entered into, and has taken effect by this method, is a right which can only be exercised by either party by a strict compliance with the terms of the policy relating to cancellation. Where such a contract has been entered into and has taken effect, and either party claims that the contract has been terminated and put an end to by virtue of such provision, it devolves upon such party to establish by the evidence that the contract has thus been terminated; and so, in this case, the defendant claiming that the contract has been terminated, it must satisfy your minds by the evidence that it had given the plaintiff notice of the cancellation of the policy, and that it had returned or tendered to him a ratable portion of the premium for the unexpired term of the policy. The notice must not be that the policy would be canceled in the future, but that it is canceled, and that the payment of the premium must in fact be made or tendered. A promise to pay it in the future is not sufficient, nor is a request that the party call and receive it sufficient—it must, in fact, be paid or tendered to the party."

So that, if this letter meant to order a cancellation of this policy, it is not a cancellation unless he has complied with what I have laid down there. So that, if you find that this defendant did not disaffirm, disavow, disclaim the authority of this agent to make the contract, but directed him to take steps to get clear of it by taking it up and canceling it, they have not complied with what the law requires them to do. The law says they must be prompt in disclaiming or disavowing the authority of the party to enter into it, and it would seem nothing more than reasonable, yet the authorities don't go quite that far, that that knowledge should come to the plaintiff some way or other. If this man is the agent of the company, and a notification to him disavowing his authority is not brought home to the plaintiff, the plaintiff must rest under it until he suffers loss, and yet not know but that the party had power to make the contract, and then when the fire takes place the company disavows the authority and disclaims the contract. It is too sudden.

So far as the misrepresentations are concerned, if you find from the evidence in the case that the plaintiff misrepresented to the agent the title of this property, stating that it was in a position it was not in at all; or if you find that they misrepresented to this company the fact that insurance was being taken by other companies in Cincinnati at 4 per cent., when in fact it was being taken at 5 per cent., that was a misrepresentation. If, however, a single policy had been taken, in which it appeared upon the face of it that 5 per cent. was the rate, and the agent who had taken it required the party to pay but 4 per cent., that was not a payment of 5 per cent. It was a payment of only 4 per cent., although the policy upon its face showed 5. If they misrepresented the title of the property under the policy of insurance it would defeat the policy. It is for you to determine whether any misrepresentation was made, upon all the evidence before you.

Take the case, gentlemen, and render such a verdict as the law and the evidence require.

Verdict for plaintiff.

See 12 FED. REP. 474.